## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMIT SAXENA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CIV-04-0415-HE |
| ) | |
| STATE OF OKLAHOMA, EX REL., ) | |
| THE BOARD OF REGENTS OF THE ) | |
| UNIVERSITY OF OKLAHOMA, ) | |
| D/B/A UNIVERSITY OF ) | |
| OKLAHOMA HEALTH SCIENCES ) | |
| CENTER AT OKLAHOMA CITY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Before the Court is the motion for summary judgment filed by defendants University of Oklahoma ("University") and Dr. Paul Weigel. Plaintiff has responded in opposition to the motion. Upon review, the Court concludes summary judgment should be granted in favor of defendants.[1]

Plaintiff filed this action against the defendants raising claims of race discrimination, breach of contract and tortious interference with contract. In particular, plaintiff alleged he was denied a promotion, demoted on two separate occasions and discharged based on his race. His claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 and Oklahoma law.

In their motion for summary judgment, defendants assert that plaintiff's Title VII

---

[1]The Court notified the parties of its decision in a previous order. (Doc. # 47).

claims, with the exception of his claim related to discharge, are barred as untimely. They further claim that plaintiff has failed to assert a prima facie case of race discrimination or establish pretext with respect to the employment actions taken against him. In addition, they claim plaintiff was not subject to a contract of employment and that, even if he was, defendant Weigel did not act against the interests of the University in his dealings with plaintiff.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, the court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Martin v. Kansas, 190 F.3d 1120, 1129 (10th Cir. 1999), overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Martin, 190 F.3d at 1129. "In cases such as this, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (internal quotations omitted).

**FACTS**

In August of 1998, plaintiff was employed by the University of Oklahoma Health Sciences Center as a research associate. Before hiring plaintiff to work in his research group at the University, defendant Dr. Paul Weigel informed plaintiff in a letter of employment that he would be required "to maintain an overlapping work schedule with the other members of the laboratory (roughly 9am-6pm) and to participate in . . . lab group research meetings." Pl's. Ex. 3. Defendant Weigel made this a specific job requirement after being informed by plaintiff's previous employers of his habit of keeping abnormal work hours. Defendant Weigel also stated in the letter of employment that plaintiff would be eligible for a promotion to associate research professor after 6-9 months of employment "pending satisfactory progress."[2]

During his employment at the University, plaintiff continued to have problems keeping a regular work schedule. In his yearly reviews of plaintiff's performance, defendant Weigel consistently commented on plaintiff's irregular hours[3] and his resistance to reforming his work schedule to coincide with the other members of the research team.[4] Plaintiff's resistance to working regular hours resulted in lower performance evaluations. After his

---

[2]*Defendant Weigel anticipated helping plaintiff "write a competitive NIH grant application" to be submitted in June of 1999. Defs' Ex. 2. However, because a grant proposal cannot be submitted by a research associate, plaintiff had to be promoted to a faculty position before he could submit such a proposal. Pl's. Dep. 107*

[3]*Defendant Weigel referred to this as "habitual unexcused tardiness." Defs.' Ex. 5.*

[4]*As Defendant Weigel explained in his review of plaintiff's performance on April 3, 2000, "[s]cience is an interactive discipline" and interaction with the other members of the research team during "the normal working day" was a crucial part of plaintiff's job. Defs.' Ex. 5.*

3

yearly review in 2000, Dr. Weigel required plaintiff to "sign in" the lab at 9:00 a.m. and "sign out" of the lab at 6:00 p.m. Plaintiff was not paid for any hours he worked outside of this schedule. In 2001, Dr. Weigel reduced plaintiff's "appointment" from 100% to 85% as a result of plaintiff's continued failure to report to work during normal hours. Finally, in 2002, plaintiff was informed at his yearly evaluation that his position was being terminated. Plaintiff's last day of employment was June 1, 2002.

## DISCUSSION

Timeliness

Defendants allege the majority of plaintiff's Title VII claims are untimely. "To avoid summary judgment on [a] Title VII discrimination claim, [plaintiff] must show that [he] filed an EEOC charge within 300 days after the alleged unlawful discrimination." Croy v. Cobe Labs., Inc., 345 F.3d 1199, 1202 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002)). However, "discrete acts of discrimination are not actionable if they fall outside the limitations period, even if they are related to acts which fall within the limitations period." Id. (citing Morgan, 536 U.S. at 114-15).

Plaintiff alleges four discrete acts of discrimination under Title VII, including a failure to promote, two acts of demotion and wrongful discharge.[5] All but plaintiff's discharge from employment occurred outside the 300-day time period for filing an EEOC charge. As a

---

[5]Plaintiff filed his EEOC charge on January 6, 2003. Any promotional opportunity came and went between April 13, 1999 (the date of plaintiff's first performance evaluation), and June of 1999 (the deadline for submitting a grant application). Plaintiff's alleged "demotions" occurred on April 3, 2000, and April 4, 2001. He was discharged on June 1, 2002.

result, plaintiff is barred from bringing these claims under Title VII. Croy, 345 F.3d at 1203. However, plaintiff also asserts these claims pursuant to § 1981. Because a § 1981 claim is not subject to the 300-day time period, plaintiff's discrimination claims are not entirely barred from review and are addressed below. See Mitchell v. City and County Of Denver, No. 02-1263, 2004 WL 2287756, at **6-7 (10th Cir. Oct. 12, 2004).[6]

Disparate Treatment

Plaintiff claims he was treated differently than other members of the research team because of his race.[7] Specifically, plaintiff alleges he was made to account for his hours by signing in and out of the lab, that he was not paid for any hours worked after 6:00 p.m. and that his hours were cut by 15%.[8]

In order to establish a prima facie case of discrimination, plaintiff must demonstrate (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) similarly situated employees were treated differently. Trujillo v. Univ. of Colo. Health Scis. Ctr., 157 F.3d 1211, 1215 (10th Cir.1998). For purposes of his prima facie case,

---

[6]*Mitchell is an unpublished decision cited for persuasive value only pursuant to 10th Cir. 36.3(B).*

[7]*Plaintiff relies on circumstantial evidence to prove his claims of discrimination. Accordingly, the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applies to plaintiff's claims. Under this analysis, the plaintiff must first present evidence to support a prima facie case of discrimination. English v. Colo. Dept. of Corrs., 248 F.3d 1002, 1008 (10th Cir. 2001). If a prima facie case is demonstrated, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. Id. The burden then shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. Id.*

[8]*Plaintiff identifies these actions as "demotions."*

plaintiff compares himself to one fellow employee, Dr. Valerie Tlapak-Simmons, as similarly situated to himself. "An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1232 (10th Cir.2000) (internal quotations omitted).

Plaintiff claims that even though Dr. Simmons worked a part-time schedule she was not made to sign in and out of the lab or otherwise account for her hours.[9] However, plaintiff does not assert that he requested part time employment and it was denied or that Dr. Simmons violated her work arrangement and was not disciplined.[10] See, e.g., English, 248 F.3d at 1011 ("When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; however, the violations must be of comparable seriousness."). As a result, plaintiff has failed to establish that he and Dr. Simmons were similarly situated. See, e.g., Jones v. Geneva Pharms., Inc., No. 04-1079, 2005 WL 1283724 (10th Cir. June 1, 2005) (finding plaintiff and employee not similarly situated where no allegation that employee violated a work rule of similar seriousness).[11] Accordingly, summary judgment is

---

[9]*Dr. Simmons apparently arranged with defendant Weigel to work a half-time schedule after returning from maternity leave. Pl's. Ex. 11.*

[10]*Plaintiff essentially argues that because Dr. Simmons was allowed to work part-time, he was entitled, as a full-time employee, to come and go as he pleased.*

[11]*Jones is an unpublished decision cited for persuasive value only pursuant to 10th Cir. 36.3(B).*

**GRANTED** in favor of the University on these claims.

<u>Failure to Promote</u>

Plaintiff claims he was not promoted to associate research professor because of his race. In order to survive summary judgment on this claim, plaintiff must establish that: (1) he belongs to a protected class; (2) he applied for and was qualified for a job for which the defendant was seeking applicants; (3) he did not receive the position; and (4) the position was not eliminated. <u>See</u>, <u>e.g.</u>, <u>Amro v. Boeing Co.</u>, 232 F.3d 790, 796-97 (10th Cir. 2000).

Plaintiff has established a prima facie case. He is a member of a protected class, he essentially applied for and was qualified for the positions in question, he did not receive the position and the position was not eliminated.

Because plaintiff has established a prima facie case, the burden shifts to the University to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for denying plaintiff a promotion. <u>English</u>, 248 F.3d at 1008. Here, the University states that plaintiff was not promoted because of his poor work evaluations related to his failure to work the required schedule. This reason is adequate to rebut plaintiff's prima facie case. <u>Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.</u>, 165 F.3d 1321, 1328 (10th Cir. 1999). As a result, the burden shifts back to plaintiff to demonstrate that the defendant's reason is pretextual. <u>English</u>, 248 F.3d at 1008.

Pretext may be shown by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of

credence." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (quoting Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir. 1997)). However, this showing must be made by reference to affidavits, deposition transcripts, or specific exhibits. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir.1998). Repeated, unsupported assertions by plaintiff that a defendant's action were based on race are insufficient to defeat summary judgment. See L & M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir.2000) ("Unsupported conclusory allegations ... do not create a genuine issue of fact.").

As evidence of pretext, plaintiff points out that defendant Weigel had no problems with plaintiff's ability to perform experiments. Because of this, plaintiff assumes that his admitted attendance problems were not really important to Dr. Weigel. However, when assessing a contention of pretext, the Court examines the facts as they appeared to the person making the decision to promote. Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1261 (10th Cir.2001). See Jones v. Barnhart, 349 F.3d 1260, 1267-68 (10th Cir. 2003) (Court does not sit as a super personnel department to second guess the decision of the employer). In this case, plaintiff was informed before he accepted employment with the University that a normal work schedule was a requirement of the position. He admits that he did not keep to the required schedule. While plaintiff may not view this job requirement as important, it is not his judgment which counts in determining pretext. Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir.1996). See Simms, 165 F.3d at 1329 (finding that an employee's own opinions about his qualifications do not give rise to a material factual dispute). As plaintiff

has failed to set forth any further evidence of pretext, the Court **GRANTS** summary judgment in favor of the University on plaintiff's failure to promote claim.

Wrongful Discharge

Plaintiff also alleges he was discharged from his employment because of his race. In order to avoid summary judgment, plaintiff must establish that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge. Kendrick, 220 F.3d at 1229; Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999).

Plaintiff's prima facie case is not challenged by the University. Instead, it claims, as noted above, that plaintiff was terminated because of his poor work evaluations related to his failure to work the required schedule. For the reasons already noted, the Court concludes plaintiff has failed to demonstrate that the University's reason for terminating him is pretextual. Accordingly, summary judgment is **GRANTED** in favor of the University on plaintiff's wrongful discharge claim.

Breach of contract

Plaintiff claims the University breached an alleged employment contract by failing to promote him to associate research professor as stated in defendant Weigel's letter of employment. The University denies an employment contract existed between it and plaintiff and, even if one did exist, no breach occurred.

Normally the existence of a contract is a factual question. However, if an alleged promise constitutes nothing more than a "vague assurance," the Court may decide the issue

9

as a matter of law.  Vice v. Conoco, Inc., 150 F.3d 1286, 1289 (10th Cir.1998).  In this case, the letter of employment did not constitute a definite promise of promotion.  Instead, it merely stated that plaintiff would be "eligible" for a promotion if his work was considered "satisfactory."  This language is nothing more than a "vague assurance" which does not create an enforceable contractual obligation.  See, e.g., Russell v. Bd. of County Comm'rs, 952 P.2d 492, 502 (Okla.1997) ("[I]n order to create an implied contract the promises must be definite.").  See also Bowen v. Income Producing Mgmt. of Okla., Inc., 202 F.3d 1282, 1284 (10th Cir. 2000) ("Employer guarantees are merely 'vague assurances' unless they place substantive restrictions on the reasons an employer may terminate an employee.").  As a result, summary judgment is **GRANTED** in favor of the University on plaintiff's breach of contract claim.

Tortious Interference with Contract

Plaintiff also alleges that defendant Weigel tortiously interfered with plaintiff's employment contract when he failed to promote him to associate professor.  The Court has determined that no promise of promotion was made in the letter of employment.  As a result, plaintiff's claim against defendant Weigel cannot lie.  Nonetheless, even if a contract existed, there is no evidence that defendant Weigel acted against the interests of the University by failing to promote plaintiff based on his failure to adhere to normal working hours.  Martin v. Johnson, 975 P.2d 889, 897 (Okla. 1998).  Accordingly, summary judgment is **GRANTED** in favor of defendant Weigel on plaintiff's tortious interference with contract claim.

## **CONCLUSION**

In accordance with the above findings of the Court, summary judgment is **GRANTED** in favor of the defendants and against plaintiff.

**IT IS SO ORDERED**.

Dated this 7th day of June, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE